RuffiN, J.
 

 The Court is of opinion that the judgment was proper against botli of the defendants. As against Banks, there is a plain liability, founded.on value in his pre-existing debt to McLeod, and his endorsement for Mullins, was within the scope of his authority. But if it had not been, he would still have been bound to the holder for value, upon the same principle on which the maker of a note to a fictitious payee, is bound, when he endorses the note in that fictitious name. He is not allowed to impeach such a note after putting it into circulation as a true one.
 

 The case is equally clear against the other defendant as endorser. It is true, he endorsed the note at the request of Banks, and, therefore, for his accommodation; and of course, a holder, without value given, could not recover from him. But as soon as the note was passed for value, that consideration attached both to the note and the endorsement. Now, an endorsement necessarity imports a contract on the part of the .endorser with those claiming under him, that the endorser has-
 
 *120
 
 a title to the note and can transfer it; and, therefore, if it does not warrant the genuineness of the prior signatures, it at least, admits them, and also their sufficiency ; as is obvious, from the liability of an endorser of a forged note, or one made by an infant or a married woman.
 

 Those positions were but slightly contested at the bar as principles of the law-merchant. But they were supposed to be much qualified in this State, by the two recent decisions of this Court in the cases,
 
 Dewey
 
 v.
 
 Cochran,
 
 4th Jones’ Rep. 184, and
 
 Southerland
 
 v.
 
 Whitaker, 5
 
 Jones’ Rep. 5. But those cases are much misconstrued in thus applying them. They were not intended to affect, and do not affect notes and endorsements, founded on actual transactions, for value ; as, for example, notes given upon sales, or intended to raise money in the general market. The decisions apply only to the cases before the Court, which were those of notes made to enable the principal to borrow money from a bank, and with that purpose sufficiently indicated, as it was thought, on the face of the papers themselves. It is well known that, in practice, our banks do two kinds of business. They discount notes for the holder, provided, as required by the charters generally, they are negotiable at the particular bank. In a transaction of that kind, the holder, or offerer, as he is eommonl}'' called, at the bank, is the borrower, and the proceeds are passed to his credit on the books of the bank, and the note is usually called, “ business paper,” and is, in the course of business, to be paid in full at maturity. They likewise do another kind of business, which is called “ accommodation,” because the maker of the note, or the principal, is the borrower, and it is usual to allow two or three renewals of those notes, either for the whole, or a part, of the sum lent. Formerly, accommodation paper was in the common form of promissory notes, expressed to be negotiable at bank, payable to A B or order, and endorsed by A B ; consequently, A B would be regarded, in the course of business, as the offerer and borrower, and it would require his check to get the proceeds of a discount. To avoid that circuity and inconvenience, it was the custom,
 
 *121
 
 by way of distinguishing accommodation, from business paper, for the last endorser of a note of the former kind, to make some memorandum at the foot of the note, such as,
 
 “
 
 credit the maker,” or “ for renewal of maker’s note,” or the like ; thus indicating the purpose of the note, and who was the of-ferer and real borrower, on whose check the money was to be paid. In consequence, however, of the expense of protests and of some losses by the banks, for want of protests and proper notices-to endorsers, the form of these accommodation notes was generally changed, and it became customary to make the note payable to the cashier of the bank, and the sureties to bind themselves as joint makers. That has been the usual course of business for, perhaps, twenty or thirty years past, and has become so settled, that the Court feel obliged to recog-nise it, and also its operation on the obligation of the parties to such accommodation papers. It is obvious, that a surety may find it greatly to his interest to be on paper of that description, rather than on that distinguished as business paper; for in the first place, he might consider that the principal would be able and ready to meet the debt upon the instalments usually allowed on accommodation at bank, while his means would certainly not enable him to pay the whole sum at the maturity of the note which the holder might require ; and in the next place, he has the assurance arising out of the settled practice of the banks, that payment will be coerced upon a failure to meet the regular instalments, and that his, the surety’s responsibility, will not be extended indefinitely or unreasonably, as might be the case, if the paper were in private hands. Such being the state of things, the Court, in those cases, thought it reasonable to impart to those notes the legal operation, and that only, which the parties to them, really intend-ded them to have, namely, that they should stand as securities for loans of money from the bank to the principal, and not be the subjects of dealing with third persons advancing money on them, or taking them, as other notes in the market might be taken. That is the whole scope of the decisions under consideration, and Judge Peabsoh is careful to point out,
 
 *122
 
 in the last case, the distinction, and to show that such notes cany their purpose and character on their face, sufficiently to inform those to whom they are offered. To apply the doctrine of those cases to the present, in the sense contended for on the part of the defendant, would he a most unreasonable interference with the established course of trade, and justly alarm the mercantile community.
 

 Pee Cueiam, Judgment affirmed.